EMPIRE BOX CORPORATION *v.* JEFFERSON ISLAND SALT MINING CO.

(*December* 20, 1941.)

LAYTON, C. J., RICHARDS and TERRY, J. J., sitting.

*Edwin D. Steel, Jr.*, for plaintiff.

*James R. Morford* for defendant.

Superior Court for New Castle County, November Term, 1941.

LAYTON, Chief Justice:

The plaintiff sued to recover for goods sold and delivered under special contract. The declaration contained three special counts and one common count. The three special counts stated the contract in varying ways. For the purpose of this decision, however, it is sufficient to consider the facts stated in any one of the special counts.

From the second count it appears (1) that in May, 1939, the parties entered into a contract by which the plaintiff agreed to sell and the defendant to buy 5,000,000 salt cartons at $4.60 the thousand, to be shipped as ordered out by the defendant; (2) that the plaintiff would manufacture only a small quantity of cartons on "the first run," the defendant to have the privilege of cancelling the contract with respect to subsequent shipments if the cartons were not equally satisfactory as those furnished the defendant by another manufacturer; and that if the first run was satisfactory, the future runs to be duplicates thereof; (3) that the defendant impliedly agreed to pay for each shipment when and as received by it; (4) that in August, 1939, the plaintiff made two shipments of cartons, the first containing 50,400, the second of 530,124 cartons, all of which were approved by the defendant as to quality and used beneficially by it; (5) that prior to March 11, 1940, a dispute arose between the parties with respect to the plaintiff's obligation to make further shipments of cartons, and on the last mentioned date the parties modified the agreement whereby the plaintiff agreed to ship the remainder of the cartons when and as ordered out by the defendant, on or before September 1, 1940, in consideration of which the defendant agreed to order out the cartons and to accept them on or before September 1, 1940, and further to relin-

quish any claim it might have against the plaintiff by reason of the prior non-delivery of the remainder of the cartons; (6) that the plaintiff has performed all of the terms of the modified contract with respect to the two shipments of cartons in August, 1939, aggregating 570,524 cartons, but that the defendant has refused to pay the agreed price therefor; (7) that the defendant announced its intention not to perform the contract, whereby the plaintiff was relieved and discharged of and from further performance.

The defendant filed various pleas. The eleventh and twelfth pleas are the only ones of present concern; and, as in the case of the declaration, it will be sufficient to state the facts as alleged in one of them. The eleventh plea, after reciting the provisions of the contract as to quality, the initial manufacture of a small quantity to show conformity with sample, and the privilege of cancellation if the cartons were not satisfactory, all substantially as set out in the declaration, proceeded to allege, (1) that the plaintiff shipped to the defendant the quantity of cartons as alleged in the declaration; but the plaintiff was informed by the defendant that they were not duplicates of the sample presented, and were not equally satisfactory as those supplied the defendant by another manufacturer; (2) that negotiations ensued, and on September 27, 1939, the defendant agreed to accept the cartons delivered as being in compliance with the contract, and ordered out the balance for immediate delivery; (3) that on September 29, 1939, and continuing until December 13, 1939, the plaintiff advised the defendant and took the position that it would not deliver the balance of the cartons except at a price in excess of the contract price; (4) that during the period from December 13, 1939 until March 11, 1940, the date of the modified contract, the plaintiff insisted that the defendant accept delivery of the balance of the cartons prior to April

1, 1940, at variance with the terms of the contract; (5) that from September 29, 1939, and until March 11, 1940, the plaintiff wholly refused to perform its contract and definitely informed the defendant of its refusal so to perform; (6) that after making the amended or substituted contract on March 11, 1940, the plaintiff further failed and refused to deliver the balance of the cartons pursuant to the substituted agreement; (7) that thereby the plaintiff breached its contract, concluding with a verification.

To each of the two pleas the plaintiff replied with a replication de injuria. The defendant demurred specially, assigning as grounds that the replication de injuria is not a proper pleading for the reasons; (1) that it is not allowed in actions ex contractu; (2) nor where the plea sets forth matters of discharge.

The system of pleading in force in this State, and strictly adhered to, is that system which prevailed in England at the time of our independence except as changed or modified by constitutional or statutory enactment. In assumpsit, the general issue of non-assumpsit puts the whole declaration in issue, and almost everything may be given in evidence which shows that the plaintiff at the time of commencing suit had no cause of action. *Reading's Heirs v. State*, 1 *Harr.* 190. By the rules adopted by the Judges of the Superior Courts of Common Law at Westminister at Hilary Term, 1834, it was provided that "in every species of assumpsit, all matters of confession and avoidance, including not only those by way of discharge, but those which show the transaction to be either void or voidable in point of law, on the ground of fraud or otherwise, shall be specially pleaded * * *". These rules are not in force in this State. *Woolley, Del. Pr.*, § 340, 1463. The replication de injuria is a species of traverse varying from the common form of general denial. At the common law

it was confined to actions of tort where the plea consisted of matter of excuse. *Chitty, Pleading* (*4th Am.* from *3d. London Ed.* 1825) 593; *Gould, Pleading,* 539; *Stephen, Pleading* (*3d. Am. from 2nd London Ed.*) 180; *Coffin v. Bassett,* 2 *Pick.* (*Mass.*) 357; *Tubbs v. Caswell,* 8 *Wend.* (*N. Y.*) 129. There is, perhaps, no direct decision in this State which so limits the use of this form of traverse, but the limitation is necessarily inferred from the system of pleading itself in force with us, and from whatever decisional authority there may be. *Thomas v. Black,* 8 *Houst.* 507, 18 *A.* 771; *Murden v. Russell,* 5 *Boyce* 362, 93 *A.* 379; *Woolley, Del. Pr.,* § 475. In England, after the adoption of the Hilary Rules by which the scope of the general issue in assumpsit was greatly narrowed, the use of this form of traverse seems to have been permitted in actions ex contractu; and the decision in *Ridgefield Park R. R. Co. v. Ruckman,* 38 *N. J. L.* 98, is apparently based on the system of pleading obtaining in the State of New Jersey in which special pleas in excuse of alleged breach of contract were allowed to be pleaded.

■■ However archaic the ancient system of pleading may be thought to be, and however desirable it may be to narrow the scope of general issues and thereby to compel the presentation of precise defenses, we think that a piecemeal alteration of the established system by day to day judicial decision is not the way to accomplish the purpose, and would lead only to confusion. It must be held that, in this State, the replication de injuria is not a proper form of traverse in the action of assumpsit. That being so, it is not necessary to consider whether the facts alleged in the pleas are matters of discharge of the contract or in excuse of performance. This also may be said. The plaintiff did not demur to the pleas, nor move to set them aside and to enter the general issue. See *Stephen, Pleading, supra,* 363;

1 *Chitty, Pleading, supra,* 500; *Gould, Pleading,* 518. The effect of the demurrer to the replication was, of course, to open the entire record for consideration by the court, and the judgment would be against that party whose pleading was first defective in substance. Assuming that the pleas amounted to the general issue, the fault is not in their substance, but in their form. *Gould, Pleading,* 514.

The demurrer to the replication is sustained.